IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT E. MILLER, JR.,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**J. S. WALTON,** )<br>**MR. SCHUMER,** )<br>**MR. BROOKS,** )<br>**MR. MALCOLM,** )<br>**MR. BENNETT,** )<br>**MR. BUSER,** )<br>**MS. BYRAM,** )<br>**MR. BURGESS,** )<br>**MS. SIEREVELD,** )<br>**MR. COPE,** )<br>**PAUL M. LAIRD,** )<br>**RICHARD SCHOTT, and** )<br>**HARRELL WATTS,** )<br>)<br>**Defendants.** ) | Case No. 3:15-cv-00533-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Robert Miller is currently incarcerated at the United States Penitentiary in Marion, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Miller has filed a *Bivens* action pursuant to 42 U.S.C. § 1331, along with claims under other federal statutes. (*Id.* at 4.) Miller alleges a number of claims concerning his tenure at Marion, including claims related to the conditions in the Communications Management Unit at Marion, the handling of his incident reports, threats by other prisoners, the failure of prison officials to protect him from those threats, and transfers to other prison units or programs. (*Id.* at 1-4.) Miller seeks monetary damages and injunctive relief, and has also filed a motion seeking Rule 65 relief. (Doc. 1 at 17-18; Doc. 3 at 6.)

This matter is now before the Court for an expedited review of Miller's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review pursuant to § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

In March 2011, Miller was placed in the Special Housing Unit at the United States Penitentiary in Lee, Virginia. (Doc. 1 at 6.) While in the Special Housing Unit, an officer with the Bureau of Prisons' Counterterrorism Unit opened Miller's mail addressed to the United States Attorney's Office in Atlanta and, given the content of the mail, charged Miller with extortion. (*Id.* at 7.) Miller did not take kindly to the charge and wrote a letter to the officer, calling him "a sick human being" and accusing him of terrorism. (*Id.*) The officer dubbed Miller's letter a threat and, according to Miller, conspired with officials to get Miller assigned to the Communications Management Unit at Lee. (*Id.*) Communications Management Units are "self-contained general population unit[s]" in place at some federal prisons "whose prisoners are placed there because authorities believe these inmates need to have their communications closely monitored." *See Lindh v. Warden, Federal Correctional Inst., Terre Haute, Ind.*, No. 2:09-cv-00215, 2012 WL 379737, at *2 (S.D. Ind. Feb. 3, 2012).

Miller entered the Communications Management Unit at Lee on September 13, 2011, and was moved to units at other prisons until his ultimate transfer to the unit at Marion on or before 2014. (Doc. 1 at 7, 11.) Since arriving at Marion, Miller claims that baseless incident reports

have been filed against him by officials to keep him in the unit and to retaliate against him for filing legal actions. (*Id.* at 8.) These incident reports run the gamut, but largely center on Miller's efforts to secure debt owed to him via UCC filings in other states. (*Id.*) In addition, Miller alleges that his disciplinary hearings at Marion have lacked due process, as Miller has not been able to call witnesses in his defense or have witnesses investigated by prison counselors or other officials. (*Id.* at 9.) Furthermore, Miller claims that the conditions at the Marion unit are improper, as the unit is unclean, has poor ventilation, and does not have any of the exercise or food-related amenities enjoyed by prisoners in the general population. (*Id.* at 13-14.) Finally, Miller claims that the rules at the Marion unit are unconstitutional, as they deprive him of access to family and friends and require close monitoring of his mail. (*Id.* at 16-17.)

Miller's issues with officials at Marion reached a peak in January 2015, when Miller was attacked by an ISIS-affiliated prisoner despite warning officials of a threat against his life. (*Id.* at 11.) Since the attack, ISIS-affiliated prisoners have made additional threats against Miller, and Miller claims he will soon be in danger given prison officials' transfer plans. (Doc. 1 at 11; Doc. 3 at 2.) According to Miller, the prison will soon transfer him to a "BOP gang violence program," where he will be exposed to members of the Nazi Low Riders or the G27s who have "hits" out on him; or to another Communications Management Unit, where he will be exposed to ISIS-affiliated prisoners "who are obligated under their jihad oath to follow their leader's orders" and harm Miller. (Doc. 1 at 12; Doc. 3 at 3-4.) Miller claims he advised prison officials of these threats, but his transfer into dangerous gang conditions will still occur. (Doc. 1 at 12.)

Unsatisfied with the prison's response, Miller filed the instant action on May 11, 2015, naming Marion employees and officials throughout the federal system. (Doc. 1 at 1.)

**Discussion**

While Miller purports to state three causes of action in his complaint, those causes of action include a mishmash of allegations under numerous sections of the United States Constitution and United States Code, making Miller's effort to sub-divide confusing. To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court will redo that work and break the claims in Miller's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Incident reports were filed against Miller in retaliation for filing claims with various courts, in violation of his constitutional and statutory rights.

**COUNT 2:** Miller was denied the opportunity to interview witnesses connected to his incident reports, in violation of his constitutional and statutory rights.

**COUNT 3:** Miller was attacked by Bennett during a search of his cell at an unspecified point in the past, in violation of his constitutional rights.

**COUNT 4:** Miller was denied access to various family members and friends, in violation of his constitutional and statutory rights.

**COUNT 5:** Miller's legal mail was accessed by prison officials, in violation of his constitutional and statutory rights.

**COUNT 6:** Miller was issued incident reports for making various UCC filings, in violation of his constitutional and statutory rights.

**COUNT 7:** Prison officials failed to protect Miller from a January 2015 assault by an ISIS-aligned inmate, in violation of his constitutional and statutory rights.

**COUNT 8:** The conditions at the Communications Management Unit violate Miller's constitutional and statutory rights, as Miller's unit is unclean, has poor ventilation, and has limited access to some food offerings and exercise.

**COUNT 9:** The food and recreation benefits available to prisoners in the general population are better than those enjoyed by Miller in the unit, in violation of his constitutional and statutory rights.

>    **COUNT 10:**  Miller is issued incident reports far more than other prisoners, in violation of his constitutional and statutory rights.
>
>    **COUNT 11:**  Miller has engaged in a hunger strike and officials have not offered him supplements, in violation of his constitutional and statutory rights.
>
>    **COUNT 12:**  Prison officials will soon transfer Miller into a gang violence program or to a Communications Management Unit with ISIS members, both of which will expose Miller to inmates who have "hits" out on his life, in violation of his constitutional and statutory rights.

Almost all of these claims must be dismissed at the gate without prejudice, as Miller has run up more than three strikes under the Prison Litigation Reform Act.  *See Miller v. Mines*, No. 7:12-cv-00382, 2012 WL 5178005, at *1 (W.D. Va. Oct. 18, 2012) (recounting Miller's strikes). Because Miller has accrued more than three strikes, he cannot avail himself of pauper status and proceed with his case by paying the filing fee in installments, unless a claim alleges an "imminent danger of serious physical injury."  *See* 28 U.S.C. § 1915(g).

To meet the imminent danger requirement, a prisoner must allege a serious physical injury that is imminent or occurring at the time the complaint is filed, and he must show that the threat or prison condition causing the injury is real and proximate.  *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).  In considering whether Miller's claims meet the imminent danger requirement, a court must construe a *pro se* complaint liberally.  *Id.*  Furthermore, a court must avoid adopting a "complicated set of rules [to discern] what conditions are serious enough" to constitute "serious physical injury."  *Id.*  That said, the "serious physical injury" exception for frequent filers who have run up all of their strikes is designed to serve as an "escape hatch for genuine emergencies" only.  *See Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Applying this framework here, **Count 12** alleges the existence of an imminent physical danger.  In his complaint, Miller alleges that he will soon be moved back to a Communications

Management Unit, where he will "be living with 30 terrorists who are obligated under their jihad oath to follow their leader's orders" and harm Miller. (Doc. 1 at 12.) In his separate motion for injunctive relief, Miller claims that he will soon be referred to a "BOP gang violence program" where he will be exposed to other gangs who have "hits" out on his life. (Doc. 3 at 2-4.) These allegations suggest an imminent danger. *See Jones v. Morton*, 409 F. App'x 936, 937-38 (7th Cir. 2010) (noting that the "relevant time frame" for purposes of imminent danger "is not limited to the exact moment an inmate faces assault," and suggesting that an upcoming risk of violence alleges imminent danger). Accordingly, Miller will be allowed to proceed on **Count 12** without paying the full fee, and his motion to proceed *in forma pauperis* shall be granted.

While the gang-related transfer claim may proceed, Miller's other claims do not present a risk of imminent physical injury. His claim related to a hunger strike is insufficient, as a prisoner cannot create the kind of danger necessary to escape the three-strikes barrier by inflicting danger on himself. *E.g.*, *Taylor v. Walker*, No. 07–cv–706, 2007 WL 4365718 (S.D. Ill. Dec. 11, 2007); *Ball v. Allen*, No. 06–cv–0496, 2007 WL 484547 (S.D. Ala. Feb. 8, 2007); *Muhammed v. McDonough*, No. 06–cv–527, 2006 WL 1640128 (M.D. Fla. June 9, 2006). His claim about the ventilation conditions at the Marion Communications Management Unit also does not put forth imminent danger, as Miller has not pled that the mold-related issues pose a risk of serious injury. *See Polanco v. Hopkins*, 510 F.3d 152, 155 (2d Cir. 2007) (prisoner's allegations that he had been exposed to mold in shower "cannot support a determination that he was in imminent danger of serious physical injury"). His claims concerning the January 2015 assault by the ISIS prisoner and the undated assault by Corrections Officer Bennett also fail to allege imminent injury, as both assaults have concluded. *See Fletcher v. Menard Correctional Ctr.*, 623 F.3d 1171, 1174 (7th Cir. 2010) (exception for imminent injury designed "to prevent impending harms, not those

harms that had already occurred"). The remainder of Miller's claims fall far from the mark, as they do not allege any physical injury, let alone a serious one. Accordingly, these claims are dismissed without prejudice. Miller may refile these claims at a later date if he pays the full fee.

Concerning the surviving **Count 12**, the Court must also determine whether this claim survives preliminary review under § 1915A. Miller's complaint characterizes the transfer claim as a "deliberate indifference" issue, suggesting that he is bringing a *Bivens* action against the defendants involved in the transfer for violating his Eighth Amendment rights to be free of cruel and unusual punishment. (Doc. 1 at 12.) The rub is that Miller names almost all of the defendants in this case as being sued in their official capacities, apparently unaware of the fact that "federal prisoners suing under *Bivens* may sue relevant officials in their individual capacity only." *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005). So the *Bivens* claim, to the extent it is brought against the defendants in their official capacities, is dismissed with prejudice.

In most situations, Miller's outright request to sue almost all of the defendants in their official capacity would be the end of the analysis, and Miller's complaint would be subject to dismissal. But the Court must "construe complaints filed by unrepresented prisoners liberally." *Riley v. Kolitwenzew*, 526 F. App'x 653, 658 (7th Cir. 2013). Here, Miller's claim concerning the transfer primarily deals with a failure to protect by individual defendants, so the Court will treat the complaint as also raising a claim against the defendants in their individual capacities. *See Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) (encouraging a "sensible approach to reading a complaint" for prisoners bringing individual or official capacity claims "so that suits may be maintained regardless of technical pleading errors").

To put forth a viable deliberate indifference claim against a defendant in his individual capacity, Miller must show that "the harm to the plaintiff was objectively serious" and that "the

official was deliberately indifferent to [the prisoner's] health or safety." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). Concerning the state of mind requirement, *Bivens* creates a cause of action based on personal liability and predicated upon fault; thus, a plaintiff must allege that each "defendant personally participated in or caused the unconstitutional actions." *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). Miller's allegations concerning personal involvement are a bit sketchy, but reading his complaint with his motion for a Rule 65 injunction – which he references in his complaint – Miller alleges that Burgess and Byram plan to transfer him to an environment where he will be exposed to Miller's known enemies, and that Watts, Walton, and Laird are aware of this plan and have failed to intervene. (Doc. 1 at 11-12; Doc. 3 at 1-4.) Accordingly, Count 12 puts forth an arguable claim against those defendants for the purposes of preliminary review and may proceed past screening. *See Stringer v. Rowe*, 616 F.2d 993, 998 (7th Cir. 1980) (involvement of high level prison officials in concurring and approving transfer sufficient to allege personal involvement). The claim must be dismissed without prejudice as to all of the other defendants, however, as Miller offers only formulaic allegations as to their involvement in the transfer matter. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (holding that "formulaic recitations" that all defendants are liable "does not put the defendants on notice of what exactly they might have done to violate [the prisoner's] rights").

One closing note concerning Miller's requests for relief. Over and above monetary damages, Miller requests Rule 65 injunctive relief via a separate motion. (Doc. 3.) His motion seeks relief related to his alleged upcoming transfer to a dangerous environment, as well as his general assignment to the Communications Management Unit. While statements in the motion suggest that Miller is presently in segregation, Miller also alleges that he was placed in segregation following a violent attack by an ISIS-affiliated prisoner who "bludgeon[ed]" Miller

in the head with a "mace-like club" and that Miller will soon be placed with inmates who are members of other prison gangs that have "hits" out on him. (*Id.* at 2-3.) The Court's review dictates that Plaintiff's request for injunctive relief as to the gang-related transfer matter deserves prompt consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's request for injunctive relief will be referred to Magistrate Judge Donald G. Wilkerson, who shall resolve the request for injunctive relief as soon as practicable.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **Counts 1 through 11** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that **Count 12** is **DISMISSED** with prejudice to the extent it raises *Bivens* claims against defendants in their official capacities.

**IT IS FURTHER ORDERED** that **Count 12** shall **PROCEED** against **WATTS**, **WALTON**, **LAIRD**, **BURGESS,** and **BYRAM** in their individual capacities. **Count 12** is **DISMISSED** without prejudice as to **SCHUMER**, **BROOKS**, **MALCOLM**, **BENNETT**, **BUSER**, **SIEREVELD**, and **COPE** in their individual capacities. Because there are no further claims against them, **SCHUMER**, **BROOKS**, **MALCOLM**, **BENNETT**, **BUSER**, **SIEREVELD**, and **COPE** are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 2) is **GRANTED** for purposes of the non-dismissed **Count 12** only. A separate order shall issue directing the trust fund officer to deduct payment from Plaintiff's trust account.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **WATTS**, **WALTON**, **LAIRD**, **BURGESS** and **BYRAM**; the Clerk shall issue the completed summons.

The United States Marshal **SHALL** serve Defendants **WATTS**, **WALTON**, **LAIRD**, **BURGESS** and **BYRAM** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

---

[1] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's pending request for Rule 65 injunctive relief (Doc. 3) is hereby **REFERRED** to United States Magistrate Judge Donald G. Wilkerson, who shall resolve the request for injunctive relief as soon as practicable, and issue a report and recommendation. The period for filing any objections to Magistrate Judge Wilkerson's report and recommendation shall not exceed **14 days** from the date of the report. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Magistrate Judge Wilkerson.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under 28 U.S.C. § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 14, 2015**

> **s/ NANCY J. ROSENSTENGEL**
> **NANCY J. ROSENSTENGEL**
> **United States District Judge**